C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
LINIERS CRESPO and LOURDES CRESPO,  :
:  **MEMORANDUM DECISION**
Plaintiffs,  :  **AND ORDER**
:
- against –  :  13-cv-2388 (BMC) (PK)
:  12-md-2331 (BMC) (PK)
:
MERCK & CO., INC. *et ano.*,  :
:
Defendants.  :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs *pro se* brought this products liability action in the District of New Jersey. The Judicial Panel on Multidistrict Litigation ("JPML") transferred it here for coordinated pretrial proceedings, pursuant to 28 U.S.C. § 1407. Because plaintiffs' claims are untimely, defendants' motion for summary judgment is granted.

## BACKGROUND

The following facts are taken from defendants' Local Rule 56.1 Statement, which is supported by evidence in the record, and which plaintiffs failed to oppose. See Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000).

In 1997, the Food and Drug Administration approved defendants' product Propecia for use in treating male pattern hair loss. Defendants are incorporated under New Jersey law, have their principal place of business in New Jersey, and made decisions regarding the labeling and marketing of Propecia in New Jersey.

Plaintiffs are a married couple living in Florida. From 2002 to 2004, Dr. Jose Suarez, a psychiatrist in Orlando, Florida, gave Mr. Crespo samples of and prescribed Propecia to treat his

hair loss. Mr. Crespo purchased and received his prescription from a pharmacy in Orlando. Mr. Crespo stopped taking Propecia no later than March 2004.

Mr. Crespo began noticing symptoms of sexual dysfunction in 2003, approximately three months after he started taking Propecia. Mr. Crespo was diagnosed with erectile dysfunction by Dr. Suarez in 2003, and was diagnosed with hypogonadism by Dr. Ambrosio Romero, a family practitioner in Florida, in 2009. At some point in 2009, Dr. Romero and Mr. Crespo discussed the possibility that Mr. Crespo's use of Propecia had caused his sexual dysfunction. Mr. Crespo met with Dr. Romero and explained that he had experienced sexual dysfunction since around the time he started taking Propecia in 2002. Dr. Romero explained that the side effects of Propecia could be the cause of Mr. Crespo's symptoms. Mr. Crespo could not recall exactly when in 2009 this conversation with Dr. Romero occurred, but believes it was either during his first visit with Dr. Romero or "[m]aybe a month, maybe two months" after Dr. Romero prescribed him testosterone and Levitra to treat his sexual dysfunction in January 2009.

Plaintiffs filed this action on April 2, 2013.

## DISCUSSION

Summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense such as the statute of limitations." Giordano v. Mkt. Am., Inc., 599 F.3d 87, 93 (2d Cir. 2010) (citing Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1492 (2d Cir. 1995)). "[S]ummary judgment may be particularly appropriate as to statute of limitations issues, since that defense often does not involve a genuine question of material fact," Sferra v. Mathew, 103 F. Supp. 2d 617, 619 (E.D.N.Y. 2000), and the "application of the statute of

limitations is an issue of law," Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 515 (2d Cir. 2001). However, summary judgment "may not be granted if there is a genuine issue of fact as to when the limitations period began or expired and that fact is material to the question of whether the statute has run." Giordano, 599 F.3d at 93.

The Court gives "special solicitude" to *pro se* plaintiffs' submissions on summary judgment, Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016), but is not obligated "to conduct a search and independent review of the record to find proof of a factual dispute," Govan v. Campbell, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (citing Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002)).

I. **Conflict of Law**

Defendants argue that New Jersey's statutes of limitations should apply to bar plaintiffs' claims. Plaintiffs do not argue to the contrary. But because plaintiffs are proceeding *pro se*, I will consider the issue.

Generally, "[a] federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012). When the JPML transfers a case, however, the "transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed." Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993). Because this action was filed in New Jersey, I apply New Jersey's choice-of-law rules.

Under New Jersey's choice-of-law analysis, the Court must first assess "whether there is an 'actual conflict' between the laws of the potentially interested states on the issue in question; if there is no divergence between the potentially applicable laws, the Court is 'presented with a false conflict,' and the choice-of-law 'inquiry is over.'" Spence-Parker v. Delaware River & Bay

3

Auth., 616 F. Supp. 2d 509, 523 (D.N.J. 2009) (internal citations omitted).  New Jersey courts conduct this analysis by "examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143, 962 A.2d 453, 460 (2008).  There is a "distinction" between potentially applicable laws if they "mandate[] different outcomes." Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006).

Here, two states have a potential interest in this action.  New Jersey is the state in which plaintiffs filed this action, and the state in which defendants are incorporated, have their principal place of business, and made decisions regarding the labeling and marketing of Propecia.  Florida is the state in which Mr. Crespo was prescribed, purchased, and took Propecia.

    A.    New Jersey's statutes of limitations

New Jersey's Products Liability Act ("PLA") displaces "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. STAT. ANN. § 2A:58C-1; see Gomez v. Bayer Corp., No. A-0680-18T4, 2020 WL 215897, at *6 (N.J. Super. Ct. App. Div. Jan. 14, 2020); Sich v. Pfizer Pharm., No. 17-CV-02828, 2017 WL 4407930, at *2 (D.N.J. Oct. 4, 2017).  Thus, all of plaintiffs' claims, except for breach of express warranty, are subsumed by the PLA.

The statute of limitations for products liability actions in New Jersey is two years after the cause of action "shall have accrued." N.J. STAT. ANN. § 2A:14-2.  Under the "discovery rule" applied by New Jersey courts, a products liability cause of action does not accrue "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 578, 153 A.3d 207, 212 (2017) (quoting Lopez v. Swyer, 62 N.J. 267,

4

272, 300 A.2d 563, 578 (1973)).  A plaintiff seeking the benefit of the discovery rule has the burden to "show that a reasonable person in her circumstances would not have been aware, within the prescribed statutory period, that she had been injured by defendants' product." Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 197-98, 36 A.3d 541, 556 (2012).  "In cases in which fault is not self-evident at the time of injury, a plaintiff need only have 'reasonable medical information' that connects an injury with fault to be considered to have the requisite knowledge for the claim to accrue." Id. at 193, 36 A.3d at 553.

A breach of express warranty claim has a four-year statute of limitations.  N.J. STAT. ANN. § 12A:2-725.  The limitations period "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and the "breach of warranty occurs when tender of delivery is made."  Id.  Thus, this "provision quite clearly establishes a general rule that the discovery principle does not apply to breach of warranty actions." South Jersey Gas Co. v. Mueller Co., No. CIV. 09-4194, 2010 WL 1742542, at *5 (D.N.J. Apr. 27, 2010), aff'd, 429 F. App'x 128 (3d Cir. 2011).

Here, New Jersey's statutes of limitations would bar all of plaintiffs' claims.  Plaintiffs' breach of express warranty claim is untimely because Mr. Crespo stopped taking Propecia in 2004, and his breach of express warranty claim accrued at this time.  Mr. Crespo did not file this action until 2013, well past the four-year limitations period.

Plaintiffs' remaining claims are untimely under New Jersey's two-year statute of limitations for products liability claims, even after applying the discovery rule.  Mr. Crespo testified that he and his physician discussed the potential link between his sexual dysfunction and Propecia back in 2009.  Once Mr. Crespo had this conversation with his physician, he was aware that (i) he had taken Propecia, (ii) his sexual dysfunction had begun shortly after he began taking

5

Propecia, and (iii) his sexual dysfunction might have been caused by Propecia. Mr. Crespo had knowledge of all the facts suggesting a possible causal connection between Propecia and his sexual dysfunction in 2009, more than two years before this suit was filed.[1] Accordingly, plaintiffs' products liability claims are untimely under New Jersey law.

B.  Florida's statutes of limitations

Florida has a four-year statute of limitations for actions founded on negligence, fraud, and products liability, FLA. STAT. § 95.11(3), and a five-year statute of limitations for actions for breach of express warranty, McKissic v. Country Coach, Inc., No. 8:07-CV-1488, 2009 WL 500502, at *9 (M.D. Fla. Feb. 27, 2009) (citing FLA. STAT. § 92.11(2)(b)). Florida applies the discovery rule to all of these claims. See id.; see also FLA. STAT. § 95.031(2)(b). The statute of limitations runs from "the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." Eghnayem v. Bos. Sci. Corp., 873 F.3d 1304, 1323 (11th Cir. 2017) (citing FLA. STAT. § 95.031(2)(b)). "[T]he knowledge required to commence the running of the limitations period under the discovery rule need 'not rise to that of legal certainty.'" Id. (quoting Univ. of Miami v. Bogorff, 583 So.2d 1000, 1004 (Fla. 1991), modified on other grounds, Tanner v. Hartog, 618 So.2d 177 (Fla. 1993)). Plaintiffs "need only have notice, through the exercise of reasonable diligence, of the possible invasion of their legal rights." Id. (citation omitted). Notice has "two essential ingredients: an injury distinct in some way from conditions naturally to be expected from the plaintiff's condition, and . . .

---

[1] Plaintiffs' opposition to summary judgment includes a letter from Dr. Mark Levin. The letter states that Mr. Crespo asked Dr. Suarez whether his sexual dysfunction could be caused by Propecia, but that Dr. Suarez assured him that such a side effect had not been reported by the drug's manufacturer. This conversation necessarily occurred before Dr. Suarez's death in 2005. Defendants argue that this event triggered the statutes of limitations for Mr. Crespo's claims. But I cannot rule as a matter of law that a reasonable person would believe that his injury could be caused by Propecia from this conversation given the physician's advice to the contrary.

exposure to the product in question." Id. (quoting Babush v. Am. Home Prods. Corp., 589 So.2d 1379, 1381 (Fla. Dist. Ct. App. 1991)).

Mr. Crespo was on notice that his use of Propecia may have caused his sexual dysfunction by March 2009 at the latest. Mr. Crespo discussed the link between Propecia and his sexual dysfunction with his physician, Dr. Romero, in 2009. He cannot recall exactly when that conversation occurred, testifying that it took place during his first visit with Dr. Romero or during a later visit "[m]aybe a month, maybe two months" after Dr. Romero prescribed him Levitra and testosterone in January 2009. Either way, this conversation occurred no later than March 2009.[2] As described above, once Mr. Crespo had this conversation with his physician, he was on notice of all the facts underlying his causes of action. Plaintiffs did not file this action until April 2, 2013, more than four years later.

Under Florida's five-year statute of limitations, plaintiffs' breach of express warranty claim is timely. However, Florida's four-year statutes of limitations bar plaintiffs' remaining claims. Accordingly, there is a conflict between New Jersey's and Florida's statutes of limitations only as to plaintiffs' breach of express warranty claim, and plaintiffs' other claims are barred under both states' laws.

## II. Choice of Law

In New Jersey, "section 142 of the Second Restatement is now the operative choice-of-law rule for resolving statute-of-limitations conflicts." McCarrell, 227 N.J. at 574, 153 A.3d at 210. "[W]hen New Jersey has a substantial interest in the litigation . . . it will generally apply its

---

[2] Although I must read the facts in the light most favorable to *pro se* plaintiffs and interpret their papers liberally "to raise the strongest arguments that they suggest," Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015), I am not required to create a dispute of fact if none exists. Mr. Crespo may be unsure of the exact timing of his conversation with Dr. Romero, but all the evidence suggests that it occurred at the latest in March 2009. I will not interpret "[m]aybe a month, maybe two months" to actually mean "three months or more" without support in the record.

statute of limitations." Id. at 593, 153 A.3d at 222.  A New Jersey court applies its own statute of limitations barring a claim "unless the exceptional circumstances of the case make such a result unreasonable." Id. at 592, 153 A.3d at 221 (quoting Restatement (Second) of Conflict of Laws § 142 (1971)).

New Jersey has a substantial interest in plaintiffs' breach of express warranty claim. Plaintiffs assert this claim against New Jersey manufacturers based on representations in the labeling and marketing of Propecia, and defendants made all decisions regarding the labeling and marketing of Propecia in New Jersey.  New Jersey has a substantial interest in the design, manufacture, and distribution of products in its state, and in protecting New Jersey companies from defending against stale claims.  See id. at 594, 153 A.3d at 222 ("When a plaintiff from another state with a longer limitations period seeks to press a claim against a New Jersey manufacturer . . . after New Jersey's statute of limitations has expired, section 142 ordinarily will not permit the claim to proceed."); Restatement (Second) of Conflict of Laws § 142 cmt. f (1971) ("A state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.'").

The Second Restatement identifies certain "rare situations where the forum will entertain a claim that is barred by its own statute of limitations but not by that of some other state." Restatement (Second) of Conflict of Laws § 142 cmt. f (1971).  These include (i) "when through no fault of the plaintiff an alternative forum is not available"; (ii) "where suit in the alternative forum, although not impossible, would be extremely inconvenient for the parties"; (iii) and "where the forum has a short statute of limitations whose primary purpose is not to protect the local courts against stale evidence but rather to insure that a specified claim involving either local persons or local events should be brought in a brief space of time." Id.

Plaintiffs do not argue that any exceptional circumstances make application of New Jersey's statutes of limitations unreasonable in this case, and I can identify none. There is no reason to believe that Florida was unavailable as an alternative forum or would have been extremely inconvenient for the parties; in fact, this MDL included multiple actions filed in Florida. Nor is New Jersey's four-year statute of limitations for breach of warranty actions particularly short; Florida's is longer by only a year. Moreover, in similar cases involving products liability cases against New Jersey corporations, New Jersey courts found no exceptional circumstances mandated departure from the general rule that its limitations periods apply. See, e.g., McCarrell, 227 N.J. at 575, 153 A.3d at 211; Martinez v. Ethicon, Inc., No. 18-CV-17570, 2019 WL 4345867, at *2 (D.N.J. Sept. 12, 2019); Gonzales v. Ethicon Corp., No. 18-CV-17658, 2019 WL 4306352, at *2 (D.N.J. Sept. 11, 2019).

Plaintiffs filed suit in New Jersey and there is no exceptional circumstance to justify departing from the general rule that New Jersey's statute of limitations applies. Accordingly, New Jersey's statute of limitations applies to bar plaintiffs' breach of express warranty claim.[3]

## CONCLUSION

Defendants' motion for summary judgment is granted.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
September 8, 2020

---

[3] Because plaintiffs' claims are untimely, I do not reach defendants' other arguments.